**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

**DONALD R. SCOTT and
MELISSA J. SCOTT,**

      **Plaintiffs,**

    **v.**                                    **Civil Action No. 3:10-cv-24-NKM**

**GMAC MORTGAGE, LLC,**

      **Defendant.**

## DEFENDANT'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant GMAC Mortgage, LLC's ("GMAC"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(6), submits this Memorandum in Support of its Motion to Dismiss Plaintiffs Donald Scott's and Melissa Scott's ("Plaintiffs") Complaint.

### I.    INTRODUCTION

Plaintiffs' Complaint arises from their cash-out refinance mortgage ("Loan") secured on their residence ("Property"). Plaintiffs' Loan from GMAC for $266,780 consolidated two mortgages (one with GMAC and one with BB&T) and paid Plaintiffs $11,719.07 cash at closing on August 17, 2007. On April 20, 2010, nearly three years later, Plaintiffs filed their Complaint alleging that GMAC failed to disclose that the Loan had lender paid mortgage insurance ("LPMI") because the Loan amount exceeded 80% of the value of their Property. Each of Plaintiffs' three Counts in the Complaint arises from GMAC's alleged failure to disclose that GMAC was paying mortgage insurance on the loan. As discussed below, two of Plaintiffs' three Counts fail to state a claim for which relief may be granted.

In Count I, Plaintiffs allege that GMAC violated the Homeowners Protection Act of 1998 ("HPA"), specifically 12 U.S.C. § 4905(c), by failing to provide the LPMI disclosures required by federal law.  Count I is time-barred under HPA's two-year statute of limitations, except that Plaintiffs have alleged they did not "discover" LPMI on the Loan until November 2009.  *See* 12 U.S.C. § 4907(b).  For purposes of this motion to dismiss, this allegation must be taken as true.

However, Count II (Actual Fraud) and Count III (Constructive Fraud) fail to state a claim for three independent reasons.  First, Plaintiffs common law fraud claims are preempted by HPA, which expressly preempts inconsistent states laws "relating to . . . any disclosure of information addressed by this Act, and any other matter specifically addressed by this Act."  12 U.S.C. § 4908(a).  Plaintiffs' common law fraud claims are based on GMAC's alleged failure to disclose LPMI on the Loan, the same disclosures regulated by HPA, and seek to impose damages that are duplicative of the alleged HPA violation (i.e. actual damages) and contrary to the remedies under HPA (i.e. punitive damages are not available).

Second, Plaintiffs' common law fraud claims are barred by the Economic Loss Rule, which is well established in Virginia.  Plaintiffs allege that after receiving the Mortgage Loan Commitment (i.e. rate lock-in) and again after closing on the Loan, Defendants failed to disclose and/or misrepresented the existence of LPMI on the Loan.  However, Plaintiffs have not alleged an independent duty that GMAC violated, and instead such misrepresentations could only be actionable as a breach of a contractual duty by GMAC.  Plaintiffs have not alleged that GMAC breach the parties' contract, and their attempt to transform a contract claim into a tort to recover punitive damages fails as a matter of law.

Third, Plaintiffs' common law fraud claims must be plead with particularity under Rule 9(b), but they fail to state the specific factual allegations required. Plaintiffs fail to provide the basic factual allegations such as identifying who misrepresented or failed to disclose a material fact to them, when and where that alleged misrepresentation occurred, and how but for their reasonable reliance on those representations they would not have been damaged. Therefore, even if Plaintiffs claims are not preempted and barred as matter of law, they have not stated a claim to satisfy the pleading standard under Rule 9(b). Therefore, Count II (Actual Fraud) and Count III (Constructive Fraud) should be dismissed.

## II. ALLEGED FACTS

Plaintiffs' Complaint arises from their cash-out refinance of two mortgages secured on their residence ("Property"). (Comp. ¶ 7 & Ex. C) Plaintiffs' Loan for $266,780 consolidated two mortgages (one with GMAC and one with BB&T) and paid Plaintiffs $11,719.07 cash at closing on August 17, 2007. (*Id.*) Plaintiffs allege that the Loan has LPMI, and that they did not know and had no reason to know that GMAC was paying mortgage insurance on the Loan until November 2009. (*Id.* ¶ 10-12) Plaintiffs were making payments on borrower paid mortgage insurance ("BPMI") on their prior GMAC loan. (*Id.* ¶ 11) Fannie Mae is the holder of this Loan, and Fannie Mae confirmed LPMI on this Loan.[1] (*Id.* ¶ 14)

After receiving a Mortgage Loan Commitment (i.e. interest rate lock-in), an unidentified agent of GMAC told Plaintiffs at some unspecified place and time prior to closing

---

[1] Plaintiffs' prior experience with BPMI and the fact that mortgage insurance is routinely required by lenders and investors (such as Fannie Mae) when a borrower's loan-to-value ratio is more than 80 percent (as it is here) undermines the plausibility of Plaintiffs' denial of any knowledge. *See, e.g.*, *Fellows v. Citimortgage, Inc.*, No. 07-cv-2261, 2010 U.S. Dist. LEXIS 46770 *5 (S.D.N.Y. May 11, 2010) ("Consistent with Fannie Mae lending guidelines, [lender] required [borrower] to obtain PMI because the loan-to-value ("LTV") ratio for the Mortgage was above 80 percent"). However, this issue will be reserved for a summary judgment motion.

3

that mortgage insurance was not required on the Loan.  (*Id.* ¶ 6, 11 & Ex. A)  Unidentified agents or representatives of GMAC failed to disclose to Plaintiffs the existence of LPMI on the Loan at some unspecified place and time after to closing when Plaintiffs inquired about BPMI (*Id.* ¶ 16-17 & Ex. D) and then later when Plaintiffs inquired about LPMI (*Id.* ¶ 18, 26 & Ex. F).  As discussed below, these allegations fails to state a claim for actual fraud (Count II) and constructive fraud (Count III) for which relief may be granted.

### III.     STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court should accept as true all well-pleaded factual allegations and should view the complaint in a light most favorable to the plaintiff.  *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991).  However, the Court need not accept as true the legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments asserted in the complaint.  *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Further, a "pleading that offers 'legal conclusions' of 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcrof v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Stidham v. Jackson*, 2:07-cv-00028, 2007 U.S. Dist. LEXIS 54032 *13 (W.D. Va. July 26, 2007) (legal conclusions "couched as factual allegations need not be accepted as true").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *see* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief").  A claim is "factually plausible" when the claimant pleads "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. If any factual allegations remain, the Court should then review them to determine if the plaintiffs have stated a plausible claim for relief. *Id*.

## IV.     ARGUMENT

### A.     Plaintiffs' fraud claims (Counts II and III) are preempted by HPA

Count I of Plaintiffs' Complaint alleges violations of the HPA. The HPA contains an express preemption provision that precludes Counts II and III for fraud under Virginia common law. The preemption provision provides that the HPA "shall supersede any provisions of the law of any State *relating to* requirements" for, among other things, "any disclosure of information addressed by this Act, and any other matter specifically addressed by this Act." 12 U.S.C. § 4908(a)(1) (emphasis added).

One federal court has interpreted the HPA's preemption provision. *See Fellows v. Citimortgage, Inc.*, No. 07-cv-2261, 2010 U.S. Dist. LEXIS 46770 (S.D.N.Y. May 11, 2010). The Southern District of New York found that "HPA's use of the words 'relating to' in its preemption provision is key." *Id.* at *32 (quoting *Mizrahi v. Gonzales*, 492 F.3d 156, 159 (2d Cir. 2007) ("Congress's use of the phrase 'relating to' in federal legislation generally signals its expansive intent."). The court explained that federal courts have construed the words "relating to" broadly in the ERISA and ADA context. *Id.* (citing cases). Based on this body of law, the court concluded: In light of the judicial interpretation of words "relating to" in the context of ERISA and the ADA, **it is clear that the preemptive reach of the HPA is expansive**. *Id.* at *37 (emphasis added).

5

In *Fellows*, the district court concluded that HPA's expansive preemption provision preempted the borrower's claims against the lender relating to the disclosure of mortgage insurance. *Id.* at *40. The facts are analogous and the court's analysis is persuasive. The plaintiff's claim for "deceptive acts or practices" in violation of the state statute were predicated on allegations that the lender failed to adequately disclose, among other things, the required payment of mortgage insurance. *Id.* The court held that allegations supporting the state claim had a "direct and substantial" connection to the HPA disclosure requirements supporting preemption. *Id.* at *41. Further, the court held that allowing the state claim to proceed would "frustrate Congress's objective" of uniform regulation of disclosure requirements related to mortgage insurance. *Id.* (citing S. Rep. No. 105-129, at 9, 1998 U.S.C.C.A.N. at 321).

Similarly here, Plaintiffs' fraud allegations are clearly "related to" the HPA's disclosure requirements. As alleged in the Complaint, the fraud claims have a direct and substantial connection to GMAC's alleged non-disclosure of mortgage insurance as required by HPA because that non-disclosure is the common basis all three Counts. The express preemption provision and the court's persuasive interpretation of it in *Fellows* reveals that Plaintiffs' common law fraud claims "would frustrate Congress's objective" to ensure uniform regulations enforced by a private civil cause of action it expressly provided in the HPA. *See id.* at *42 ("This civil enforcement scheme is one of the 'essential tools for accomplishing the stated purposes,' of the HPA.) (quoting *Pilot Life Inc. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987)). Therefore, Plaintiffs fraud claims under Virginia common law are preempted by HPA and must be dismissed.

**B.    Plaintiffs' fraud claims (Counts II and III) are barred by the Economic Loss Rule**

The Economic Loss Rule is well established in Virginia law, which requires a tort claim (such as fraud) to be based on breach of a duty independent of contract. *See Richmond*

6

*Metro. Auth. v. McDevitt St. Bovis Inc.*, 507 S.E.2d 344, 347 (Va. 1998) ("A tort action cannot be based solely on a negligent breach of contract."). To determine whether a cause of action sounds in tort or in contract, the Court must ascertain the source of the duty violated. *Id.* If the cause of complaint would not give rise to any cause of action absent a contract, then the action is founded upon contract, not tort. *Id.* "[W]hen a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). Accordingly, failure to allege sufficient facts of an independent willful tort is grounds for dismissal under the Economic Loss Rule. *See Princeton Woods, LLC v. PNC Bank*, No. 1:09cv905, 2009 U.S. Dist. LEXIS 100877, *18-22 (E.D. Va. Oct. 28, 2009) (granting motion to dismiss fraud counts for failure to allege an "independent common law duty supporting the tort claims"); *see also Wigand v. Costech Techs., Inc.*, No. 3:07cv440, 2008 U.S. Dist. LEXIS 743, *29 (E.D. Va. Jan. 4, 2008) (granting motion to dismiss explaining that the "fraud claim violates the Virginia economic loss rule because it seeks tort damages for duties that arose solely out of contract").

Here, Plaintiffs' allegations of fraud (both actual and constructive) arise out of the contractual relationship between GMAC and Plaintiffs. Other than federal disclosure requirements such as HPA, the only duties that GMAC owed to Plaintiffs were contractual, arising solely from the prior mortgage, the Mortgage Loan Commitment, or the Loan. Absent extraordinary circumstances, the relationship between a borrower and a lender "is entirely defined by contract." *See Rossmann v. Lazarus*, No. 1:08cv316, 2008 U.S. Dist. LEXIS 81701, *20 (E.D. Va. Oct. 15, 2008) (citing cases regarding no fiduciary duties between lender and borrower). Plaintiffs have not alleged factual allegations demonstrating that this case involved

7

extraordinary circumstances to establish a duty independent from the contracts between Plaintiffs and GMAC.

Further, the damages Plaintiffs allege also demonstrate that the contract is the basis of their fraud claims.  Plaintiffs are complaining that they did not get the benefit of their bargain, namely the Mortgage Loan Commitment, which did not disclose LPMI.  Plaintiffs seek damages to offset the alleged losses from failure to receive those contractual benefits (e.g. savings on interest payments and taxes).  (*See* Comp. ¶ 6, 33(a)-(d), relief requested in Counts I-III, & Ex. A)  The contractual basis of these "fraud" claims is evidence in Plaintiffs' comparison of the alleged initial Mortgage Loan Commitment (Ex. A) to the subsequent Mortgage Loan Commitment disclosing LPMI (Ex. F).  Plaintiffs' fraud claims seeking purely economic losses arising from their contractual relationship with GMAC is a textbook example of when the Economic Loss Rule applies.  Therefore, the Economic Loss Rule requires dismissal of Plaintiffs' fraud claims (Counts II and III), and punitive damages cannot be recovered as a matter of law.  *See Princeton Woods, LLC*, 2009 U.S. Dist. LEXIS 100877 at \*21 ("In Virginia, punitive damages are not available in the absence of an independent willful tort.").

### C.  Plaintiffs' fraud claims (Counts II and III) fail to state a claim

Even if Plaintiffs' actual fraud claim (Count II) and constructive fraud claim (Count III) were not preempted by HPA or barred by the Economic Loss Rule, Plaintiffs fail (1) to plead fraud with the requisite particularity or (2) to plead sufficient facts to show they reasonably relied on the alleged misrepresentations to their detriment.

#### 1.  Plaintiffs fail to plead fraud with the requisite particularity

Under Virginia law, to state a prima facie case of fraud, Plaintiffs must allege that GMAC made (1) a false representation (2) of a material fact (3) made intentionally and knowingly (4) with intent to mislead (5) upon which Plaintiffs reasonably relied (6) that

8

damaged Plaintiffs.  *See Ashmore v. Herbie Morewitz, Inc.*, 475 S.E.2d 271, 274-75 (Va. 1997). Moreover, fraud is required to be pled with specificity.  Indeed, "[i]n alleging fraud…a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  As the Fourth Circuit has elaborated, "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  Accordingly, failure to plead each of the elements for a prima facie fraud claim, with the requisite particularity of the circumstances of the alleged fraud, requires dismissal.  *See Jackson v. BECCM Co.*, No. 3:09cv54, 2010 U.S. Dist. LEXIS 576, *18 (W.D. Va. Jan. 5, 2010) (granting motion to dismiss fraud claim for failure "to sufficiently specify the precise timing of the alleged misrepresentations as required by Rule 9(b)").

For example, this Court compared the requirements of rule 9(b) "to the goal of a good newspaper lead—who, what, when, where, and how."  *Xcoal Energy & Resources, LP v. Smith*, No. 2:07cv57, 2008 U.S. Dist. LEXIS 7972, *3 (W.D. Va. Feb. 4, 2008).  The plaintiff in *Xcoal Energy* alleged that the defendants made misrepresentations in a purchase order dated July 29, 2005 and two warehouse receipts executed on or about December 27, 2005.  *Id*. at *3-4.  The plaintiff alleged further that two of the defendants repeatedly made more misrepresentations between July 2005 and December 2005.  *Id*.  The Court dismissed the Complaint, ruling:

> It is clear . . . the Complaint does not comply with Rule 9(b) in that it does not adequately state the times of the alleged misrepresentations or the places where they occurred.  *Moreover, the nature of the misrepresentations is only generally averred, without the particulars of the oral statements and by which of the defendants they were made*.

*Id*. at *4 (emphasis added).

9

Similarly, Plaintiffs only aver their fraud claims against GMAC in a most general, conclusory fashion. Similar to the claimant in *Xcoal Energy*, Plaintiffs allege that the Defendants made misrepresentations to induce them to enter into the mortgage transaction. (Comp. ¶ 11) However, Plaintiffs do not state where they were made, who made them, to whom they were made, or in what way they were untrue. In fact, it is a true statement that there is no BPMI on the Loan and, if there were, it would appear on the HUD-1. (*See id.*) There simply are insufficient factual allegations of "who, what, when, where, and how" to state a fraud claim. Indeed, Plaintiffs have alleged little more than a "formulaic recitation of the elements of a cause of action." *See Twombly*, 127 S. Ct. at 1964-65. Accordingly, the fraud claims should be dismissed.

2.  **Plaintiffs fail to plead facts sufficient to show that they reasonably relied on the alleged misrepresentations**

Plaintiffs' fraud claims also fail because they have not pled sufficient facts showing that they reasonably relied on any misrepresentation made by Defendants. To prove fraud, a plaintiff must show that its reliance upon the alleged misrepresentations was "reasonable and justified." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999); *Calhoun v. Exxon Corp.*, No. 94-1345, 1995 U.S. App. LEXIS 21668, *7-8 (4th Cir. Aug. 11, 1995) (affirming dismissal of fraud claims because "reliance on false statements must be accompanied by a right to rely"). A party claiming fraud must plead with particularity facts showing reasonable, detrimental reliance on the misrepresentations. *Basham v. Gen. Shale Prods. Corp.*, No. 92-1608, 1993 U.S. App. LEXIS 4876, *10-14 (4th Cir. 1993) (affirming dismissal of fraud claims because of plaintiffs' "failure to allege any facts establishing *their* reliance on [defendant's] alleged misrepresentations") (emphasis in original); *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987) ("Reasonable, detrimental

10

reliance upon a misrepresentation is an essential element of a cause of action for fraud . . . and such reliance must be pleaded with particularity."); *Mizell v. Sara Lee Corp.*, No. 2:05cv129, 2005 U.S. Dist. LEXIS 36988, *17 (E.D. Va. June 9, 2005) (dismissing fraud claim due to failure to plead reliance with particularity); *Kline v. Nationsbank of Va., N.A.*, 886 F. Supp. 1285, 1295-96 (E.D. Va. 1995) (dismissing fraud claim because complaint "[did] not meet the requirement of alleging with specificity how [plaintiff] reasonably relied on a particular, intentionally false statement to her detriment").

In *Kline*, the plaintiff alleged only that she "relied upon the representations of [defendant]." 886 F. Supp. 1295. The court dismissed the fraud claim, ruling that the bare allegation "gives defendant no notice of how plaintiff relied on the statements, much less if that reliance was reasonable." *Id*. Neither the court nor the defendant should be left to wonder how exactly the plaintiff detrimentally relied on an alleged misrepresentation. *Xcoal Energy & Resources, LP v. Smith*, No. 2:07CV00057, 2008 U.S. Dist. LEXIS 22831, *4 (W.D. Va. March 20, 2008) ("Perhaps there is some detrimental reliance that neither [the court] nor the [defendants] have thought of. But we should not have to speculate on the particulars of [the plaintiff's] fraud claim.").

Here, Plaintiffs leave GMAC to "speculate on the particulars" of the fraud claims against it. Although the Complaint is unclear, it appears that Plaintiffs' only alleged "reliance" on a misrepresentation is that the "primary purpose in obtaining the Loan was to shed the **buyer paid mortgage insurance,**" and Plaintiffs were told because the HUD-1 did not disclose such payments, no such mortgage insurance was on the Loan. (Comp. ¶ 11) (emphasis added). These allegations fail to state a claim for fraud because: (1) they are true based on Plaintiffs' allegations (i.e. there is no BPMI on the Loan); and (2) they fail to state that "but for" these representations

Plaintiffs would not have entered into the Loan (i.e. no allegation that LPMI would have been a deal breaker, or that Plaintiffs could have obtained this Loan without mortgage insurance).[2] Plaintiffs also allege that GMAC failed to disclose and/or concealed LPMI in subsequent correspondence, but nowhere allege how they relied on that non-disclosure to their detriment. (*See* Comp. ¶ 17, 25, 27 & Ex. D, F). Therefore, it is impossible to determine from the Complaint that Plaintiffs reasonably relied on any alleged representation by GMAC. The Court should dismiss the fraud claims (Counts II and III) for Plaintiffs' failure to allege detrimental reliance with particularity.

## V. CONCLUSION

WHEREFORE, Defendant GMAC Mortgage, LLC respectfully requests that the Court grant its Motion to Dismiss and enter an Order dismissing with prejudice Count II (Actual Fraud) and Count III (Constructive Fraud) of Plaintiffs' Complaint and grant GMAC any other legal or equitable relief the Court deems appropriate.

GMAC MORTGAGE, LLC

By:   /s/ Jason E. Manning
        Of Counsel

John C. Lynch (VSB No. 39267)
Jason E. Manning (VSB No. 74306)
Counsel for Defendant GMAC Mortgage, LLC
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7765

---

[2] In fact, Plaintiffs could not have obtained the Loan without mortgage insurance because the loan-to-value exceeds 80%, and reducing the loan amount to less than 80% to avoid mortgage insurance would mean Plaintiffs received no cash back (or at least far less than the $11,719.07 they received with this cash-out refinance). This is an issue for summary judgment, but it again demonstrates that Plaintiffs cannot allege "reasonable reliance to their detriment" because they could not have obtained the Loan amount without mortgage insurance.

Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2010, I electronically filed the foregoing Defendant GMAC Mortgage, LLC's Memorandum in Support of their Motion to Dismiss Plaintiffs' Complaint with the clerk of the Court using the CM/ECF system which will send notification of such filing to:

**Counsel for Plaintiffs**
Jonathan R. Wren
Martin Wren, P.C.
1228 Cedars Court
Charlottesville, Virginia 22903
Phone: 434-817-3100
Fax: 434-817-3110
Email: jwren@mrlaw.com


　　　　/s/ Jason E. Manning
Jason E. Manning (VSB No. 74306)
Counsel for Defendant GMAC Mortgage, LLC
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia  23462
Telephone:  (757) 687-7564
Facsimile:  (757) 687-1524
E-mail: jason.manning@troutmansanders.com

401380v1