# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DONALD R. SCOTT, ET AL., <br><br> *Plaintiffs,* <br><br> v. <br><br> GMAC MORTGAGE, LLC, <br><br> *Defendant.* | CIVIL NO 3:10cv00024 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion to Dismiss (docket no. 6), filed on June 8, 2010. On August 16, 2010, the parties appeared before the Court on the instant motion. For the reasons stated herein, the Court will grant in part and deny in part Defendant's Motion.

## I. FACTUAL BACKGROUND[1]

Plaintiffs Donald and Melissa Scott ("Plaintiffs") attempted to secure a refinance loan ("Loan") secured by their property in Palmyra, Virginia, from Defendant GMAC Mortgage, LLC ("Defendant"). Their primary purpose in obtaining the Loan was to shed the buyer paid mortgage insurance[2] that was on the previous GMAC loan that Plaintiffs were refinancing, and Plaintiffs made known their desire to obtain financing without BPMI to Defendant's loan officer. The loan officer with whom the Plaintiffs worked told Plaintiffs that no mortgage insurance would be required as a part of the Loan, and Plaintiffs relied on that assertion in choosing to enter into the mortgage transaction.

---

[1] Unless state otherwise, the facts are presented in the light most favorable to Plaintiffs. *See Dunn v. Borta*, 369 F.3d 421 (4th Cir. 2004).

[2] Buyer paid mortgage insurance ("BPMI") is defined by the HPA as "private mortgage insurance that is required in connection with a residential mortgage transaction, payments for which are made by the borrower." 12 U.S.C. § 4905(a)(1).

Defendant submitted to Plaintiffs a Mortgage Loan Commitment granting Plaintiffs approval for the Loan and enumerating the terms of the Loan. On August 17, 2007, Plaintiffs closed on the Loan and executed a note in the amount of $266,780 at an interest rate of 6.875% per annum. At the closing, Plaintiffs executed a U.S. Department of Housing and Urban Development Settlement Statement Form ("HUD-1") which itemized all of the charges imposed upon both parties by the Loan agreement. Neither the Commitment, note, nor HUD-1 indicated that the Loan was burdened by mortgage insurance; Plaintiffs were entirely ignorant of the existence of any mortgage insurance on the Loan.

In November 2009, Plaintiffs attempted to refinance their Loan through EverBank pursuant to the federal government's Making Home Affordable Program. The Federal Home Loan Mortgage Corporation ("Freddie Mac") informed EverBank, however, that the Loan was burdened with mortgage insurance. EverBank communicated the information supplied by Freddie Mac to Plaintiffs, who subsequently inquired of Defendant regarding the mortgage insurance. Defendant informed Plaintiffs in a letter that no insurance premium payments were being made from the Loan's escrow account. Plaintiffs thus continued to assume that no private mortgage insurance encumbered the Loan.

After receipt of Defendant's letter, Plaintiffs discovered that Freddie Mac continued to report that the Loan was burdened with mortgage insurance. Plaintiffs again sought an explanation. After multiple inquiries, Defendant acknowledged that the Loan was burdened by lender paid mortgage insurance.[3] Because the Loan was so burdened, Plaintiffs were unable to refinance their Loan under the Making Homes Affordable Program. Plaintiffs argue that they could have refinanced with EverBank at an annual interest rate of 4.75%, which would have

---

[3] Lender paid mortgage insurance ("LPMI") is defined by the HPA as "private mortgage insurance that is required in connection with a residential mortgage transaction, payments for which are made by a person other than the borrower." 12 U.S.C. § 4905(a)(2).

saved them $360.90 per month, or $129,924.00 over the life of the Loan.

After Defendant's admission that an LPMI policy burdened the Loan, Plaintiffs continued to request that Defendant cancel that LPMI policy. Instead, Defendant offered Plaintiffs a "workout package" for their Loan. Included in that package was a Mortgage Loan Commitment form which Defendant claimed was the same Mortgage Loan Commitment form given to Plaintiffs before they closed on the Loan. That document contained a provision for LPMI, whereas the document originally given to Plaintiffs did not. When notified of this discrepancy, Defendants continued to refuse to remove LPMI from the Loan.

Plaintiffs filed a complaint in the Circuit Court for the County of Albemarle on April 20, 2010, alleging three causes of action: (1) violations of the disclosure provisions of the Homeowners Protection Act ("HPA") pursuant to 12 U.S.C. §§ 4905 and 4907; (2) common law actual fraud; and (3) common law constructive fraud. Defendant removed the case to this Court on May 24, 2010. Defendant filed the instant Motion on June 8, 2010 moving for dismissal of both common law fraud claims (Counts II and III).

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (quotations omitted)). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *see also Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). A complaint cannot survive a

motion to dismiss by pleading facts that raise "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, --- U.S. ---, --- 129 S. Ct. 1937, 1949 (2009). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Courts considering fraud claims must apply additional scrutiny. Whereas "the pleading standard Rule 8 announces does not require detailed factual allegations . . .," the standard announced by Rule 9 does. *Iqbal*, 129 S. Ct. at 1949 (citation and internal quotation omitted). Rule 9(b) requires that claimants "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to comply "with Rule 9(b)'s particularity requirement for allegations of fraud is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison*, 176 F.3d at 786 (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 290 at 590 (2d ed. 1990)); *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). Furthermore, the Fourth Circuit requires that reasonable, detrimental reliance on a misrepresentation "be pleaded with particularity." *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987).

## III. DISCUSSION

Defendant raises three separate grounds for the dismissal of Plaintiffs' fraud claims. First, Defendant argues that the preemption provision of the HPA, 12 U.S.C. § 4908(a)(1), precludes Plaintiffs from bringing common law fraud claims relating to the disclosure provisions of the HPA. Second, Defendant argues that Plaintiffs' claims are barred by Virginia's common law economic loss rule. Finally, Defendant argues that Plaintiffs have failed to meet the heightened pleading standard of Rule 9(b).

### A. PREEMPTION

Defendant argues that the preemption provision of the HPA precludes Plaintiffs from bringing their common law fraud suits. Section 9 of the HPA reads in pertinent part:

> the provisions of this chapter shall supersede any provisions of the law of any State relating to requirements for obtaining or maintaining private mortgage insurance in connection with residential mortgage transaction, cancellation or automatic termination of such private mortgage insurance, any disclosure information addressed by this chapter, and any other matter specifically addressed by this chapter.

12 U.S.C. § 4908(a)(1). "'The purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)). Congress may express its preemptive intent in two ways. First, as is the case in the HPA, Congress may preempt conflictive state law by using express preemptive language in the statute. *Jones v. Rath Packing Co.*, 430 U.S. 519, 523 (1977). Second, Congress may indicate its intent by creating a statutory structure that "is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Hillsborough County, Fla. V. Automated Medical Laboratories,*, 471 U.S. 707, 713 (1985) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982); *Rath Packing Co.*,

430 U.S. at 525. Furthermore, "[e]ven where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *de la Cuesta*, 458 U.S. at 153. Such a conflict may arise when compliance with both federal and state regulations is physically impossible, *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 143-43 (1963), or when state law tends to confound the "purposes and objectives of Congress." *Hines v. Davidowitz*, 321 U.S. 52, 67 (1941).

The use of an express preemption provision clearly establishes Congress's intent to preempt conflicting state laws. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992) (plurality opinion). Furthermore, an express preemption clause establishes a strong presumption against implied preemption within the same federal statute. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 289 (1995). Despite this inference, however, courts may still examine the scope and scheme of a statute containing an express preemption clause to determine whether implied preemption exists. *Id.; see also Altria Group, Inc. v. Good*, --- U.S. ---,---, 129 S. Ct. 538, 543 (2008). Indeed, the use of "an express pre-emption clause . . . [does not] immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law remains." *Altria*, 129 S. Ct. at 543.

An analysis of the scope of any given preemption clause must begin with "the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest intent of Congress." *Altria Group*, 129 S.Ct at 543 (quoting *Rice*, 331 U.S. at 230); *see also Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1467 (4th Cir. 1996) ("[C]ourts address claims of preemption with the starting presumption that Congress does not intend to supplant state law. This is especially true in cases involving fields of traditional state regulation, including common law tort liability." (citations and quotations omitted)). In further deference to the states' role as "independent sovereigns in our federal system, [courts] have long

presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic*, 518 U.S. at 485. Instead, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption.'" *Altria Group*, 129 S. Ct. at 543 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)). Therefore, the HPA preempts Plaintiffs' common law fraud claims if they are specifically preempted by the express language of § 9, or if enforcement of the common law fraud claims would frustrate Congress's purpose in passing the HPA.

Congress enacted the HPA with the express purpose of "establish[ing] federal guidelines for disclosure and termination of private mortgage insurance (PMI)." H.R. Rep. No. 105-55, at 4 (1997). Congress enacted the legislation because "homeowners are not always informed when PMI is required, and if it is, how it can be terminated." *Id.* at 6. To remediate this confusion and uncertainty, Congress undertook to "establish Federal standards for disclosure and termination of PMI so that borrowers do not pay for insurance after all parties in the mortgage insurance process agree that such insurance is no longer necessary." *Id.* Congress intentionally provided "broad preemptive language [in order to] minimize compliance costs with respect to state laws." S. Rep. No. 105-129 at 9 (1997).

As noted previously, the HPA expressly preempts "any provisions of the law of any State *relating to* requirements for obtaining or maintaining private mortgage insurance." 12 U.S.C. § 4908(a)(1) (emphasis added). By its nature, the term "relating to" does not readily lend itself to definition. "Taken at its face value, the term 'relat[ing] to' has no logical boundary. In one way or another, everything relates to everyone else." *Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 861 (4th Cir. 1998); *see also N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 654, 655 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for

[r]eally, universally, relations stop nowhere." (internal quotations and citations omitted)). Although the Supreme Court has held such language to be "expansive," it is not without limits. *Travelers Ins. Co.*, 514 U.S. at 655. To hold otherwise would be "to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." *Id.* at 655.

In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), the Supreme Court analyzed similar preemption language in the ERISA context, and held that "a law 'relates to' an employee plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96-97. It balanced the definition by holding that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n.21. In subsequent ERISA preemption cases, however, the Court has gone "beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Travelers Ins. Co.*, 514 U.S. at 656. Similarly, examining the objectives of the HPA is necessarily instructive in determining its preemptive scope.

The most relevant question for such an analysis is whether permitting Plaintiffs' common law fraud claims to proceed would confound Congress's objective in passing the HPA, that is, the creation and enforcement of a uniform set of regulations governing disclosure of mortgage insurance. First, Congress's purpose in passing the HPA was to create a uniform set of regulations to govern the disclosure of mortgage insurance. S. Rep. No. 105-129 at 7-8. As in ERISA, Congress's use of the broad term "related to" in the HPA's preemption provision was to protect the uniformity of those regulations from varying regimes among the several states. *Id* at 9. The instant fraud claims do not threaten the structural integrity of those regulations. The fraud claims raised here are claims of general application. They do not directly relate to the

disclosure requirements enumerated in § 4905. They are applicable to all commercial transactions, and premised on a general duty not to deceive. Nor is evidence of the alleged lack of disclosure necessary to carry the fraud claim. The HPA claims depend on evidence of failure to disclose. The fraud claims depend on evidence of an affirmative misrepresentation of material fact. The two are unrelated. Thus, even the evidence necessary to prove the different claims is entirely distinct. Finally, the fraud claims do not directly affect the application of the HPA's disclosure requirements. They enforce no requirements greater or lesser than those embodied in the HPA. Instead, common law fraud merely requires that parties to a transaction avoid deceiving each other. Therefore, because the Court must begin with an assumption against preemption, *see Coyne*, 98 F.3d at 1467, and because the fraud claims are altogether distinct and beyond the objectives of the HPA, I conclude that Plaintiffs' fraud claims fall outside the preemptive scope of the HPA. Accordingly, I conclude that Plaintiffs' fraud claims are not preempted.

### B. VIRGINIA COMMON LAW FRAUD

To establish a prima facie case of common law fraud in Virginia, a plaintiff must plead that the defendant:(1) made a false representation; (2) of a material fact; (3) which representation was made intentionally and knowingly; (4) with intent to mislead; (5) upon which the plaintiff reasonably relied; (6) and thereby suffered damage. *Sales v. Kecoughtan Housing Co., Ltd.*, 690 S.E.2d 91, 94 (Va. 2010); *see also Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 476-77 (4th Cir. 2006); *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 356 (Va. 1998). Constructive fraud is nearly identical to actual fraud under Virginia law. It differs in that the representation need only be made innocently or negligently. *Sales*, 690 S.E.2d at 94; *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (applying Virginia law); *Waytec Elec. Corp. v. Rohm and Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480, 491

## C. ECONOMIC LOSS RULE

"[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contract." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). The economic loss rule prohibits the recovery of "'purely economic losses' in a tort action simply by recasting a contract claim as a tort claim." *Waytec Elec. Corp.* 459 F. Supp. 2d at 491 (citing *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 374 S.E.2d 55, 57 (Va. 1988)). The purpose of the rule is to preserve the contract-tort distinction in the common law. "The law of torts is well equipped to offer redress for losses suffered by some reason of a 'breach of some duty imposed by law to protect the broad interests of social policy.' Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Sensenbrenner*, 374 S.E.2d at 58 (quoting *Kamlar Corp. v. Haley*, 299 S.E.2d 514, 517 (Va. 1983)).

In order to determine whether a claim is subject to the restrictions imposed by the economic loss rule, a court must first determine the nature and source of the duty allegedly violated. *McDevitt Street Bovis, Inc.*, 507 S.E.2d at 347. If the duty does not exist absent an agreement establishing that duty, then it is a duty based in contract. If the duty arises from the relationship of the parties irrespective of any agreement, then the any action for breach of that duty sounds in tort. *Oleyar v. Kerr*, 225 S.E.2d 398, 399-400 (Va. 1976). "Thus, if, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply." *City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990).

Fraud in the inducement, although related to contract, still sounds in tort. "The general rule is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated

on unfulfilled promises or statements of future events." *Soble v. Herman*, 9 S.E.2d 459, 464 (Va. 1940). Virginia law, however, "'distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract.'" *Madison Mgmt. Group*, 918 F.2d at 447 (quoting *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988)). The "critical inquiry . . . is whether the defendant's statement . . . was false when made." *Lissman*, 848 F.2d at 53. Indeed, when a party "makes a promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud." *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985)

Plaintiffs' actual fraud claim falls within the fraud exception to the economic loss rule. Plaintiffs allege that they entered into the mortgage contract in reliance upon Defendant's misrepresentation. Compl. ¶ 11. They further claim that the misrepresentation was "knowingly and intentionally made, with the intent to mislead Plaintiffs . . . ." *Id.* at ¶ 36. Plaintiffs have thus pled that the alleged fraud occurred in order to induce them to enter into the contract. As such, Plaintiffs actual fraud claim is not barred by the economic loss rule.

The same is not true for Plaintiffs' constructive fraud claim. Constructive fraud is premised upon innocent or negligent misrepresentation of a material fact. Courts have held that such claims are "nothing more than a claim of negligence." *Va. Transformer Corp. v. P.D. George Co.*, 932 F. Supp. 156, 163 (W.D. Va. 1996). As a negligence claim, it may only survive the economic loss rule if the duty violated existed in law and not solely under an agreement between the parties. *Oleyar*, 225 S.E.2d at 399-400.

In *Filak v. George*, the plaintiffs entered into an insurance contract on the advice of defendant insurance agent. The defendant represented that the policy would pay out certain benefits, and the plaintiffs relied upon defendant's representations to enter into the contract.

*Filak*, 594 S.E.2d at 611-613. When the insurer ultimately failed to perform in accordance with the defendant's representations, the plaintiffs filed a constructive fraud suit against the defendant, arguing that the defendant had a "'common law duty' to be truthful to them." *Id.* at 613. The court rejected the plaintiffs' arguments, holding that the only duty that the defendant owed to the plaintiffs was assumed in the contract between the parties. Negligent failure to satisfy that duty was a mere breach of contract and not constructive fraud. *Id.* at 613-14.

The *Filak* court's reasoning applies directly to the instant case. Plaintiffs' constructive fraud claim amounts essentially to a claim of negligence. Yet, the duty alleged – to provide a loan free of mortgage insurance – does not exist in law. Rather, the duty exists only between the parties by nature of their agreement. Negligent failure to perform that duty sounds in contract and not in tort. To hold otherwise "would emasculate the economic loss rule." *Va. Transformer Corp.*, 932 F. Supp. at 163. Therefore, the economic loss rule bars Plaintiffs' constructive fraud claim.

### D. RULE 9(b) PARTICULARITY REQUIREMENT

As stated above, a plaintiff pursuing a fraud claim must plead the elements of his claim with particularity. Fed. R. Civ. P. 9(b). Specifically, a plaintiff must plead with particularity the time and place the misrepresentations were made, the contents of those representations, the identity of the individual making the misrepresentation, what the individual making the misrepresentation gained from making it, and that the aggrieved party reasonably and detrimentally relied on those misrepresentations. *See Harrison*, 176 F.3d at 784; *Learning Works*, 830 F.2d at 546.

The *Harrison* requirements are not unyielding. *Harrison* identifies four purposes for the heightened requirements that serve to guide a court's consideration of whether the Rule 9(b) standard has been met. First, the rule ensures that defendants have sufficient information to

formulate a defense. *Harrison*, 176 F.3d at 784. Second, the rule offers protection to defendants from frivolous suits. *Id.* Third, the rule eliminates fraud actions in which all the facts are learned after discovery. *Id.* Finally, the rule protects defendants' reputations. *Id*.

In *Nahigian v. Juno Loudon, LLC*, 684 F. Supp. 2d 731 (E.D. Va. 2010), the plaintiffs brought a fraud suit against the defendant developer, alleging that the defendant's employees fraudulently induced the plaintiffs to purchase real estate by making misrepresentations about the nature of the development. *Id.* at 735. In their complaint, the plaintiffs did not identify which of defendant's representatives made the misrepresentation. *Id.* at 738-39. They further only pled a general time period in which the misrepresentations occurred, and only identified very generally the location at which they were made. *Id.* The court nevertheless held that the plaintiffs' allegations were sufficient under Rule 9(b). The court held that identifying merely the entity and not the specific representative that made the misrepresentations, as well as its more general allegations of when and where the misrepresentations were made, was sufficient to allow the defendant to raise a defense.

Here, as in *Nahigian*, Plaintiffs have alleged the elements of their actual fraud claim with sufficient particularity to allow Defendant to raise a defense. As to the time and place of the misrepresentations, Plaintiffs do not allege the precise location, date, and hour at which Defendant allegedly made the misrepresentations. Yet, they identify the entity (GMAC, LLC) for which the alleged misrepresenting party was employed. Compl. ¶ 11. They further allege a general period during which the misrepresentations took place (August 2007). *Id*. at ¶¶ 5, 7, 11. They also allege that the "parties entered into and executed the residential mortgage transaction" at Defendant's Albemarle County office. *Id.* at ¶ 2. The Court draws the reasonable inference that the misrepresentations took place at that office as well. Plaintiffs allege with specificity the contents of the misrepresentation. *Id.* at ¶ 11. Plaintiffs also allege their detrimental reliance with

sufficient particularity. *Id.* at ¶¶ 11, 36. Therefore, Plaintiffs have alleged actual fraud with sufficient particularity to allow Defendant to raise a defense, therefore meeting Rule 9(b)'s heightened pleading standard.

### IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss is GRANTED as to Plaintiffs' constructive fraud claim, and DENIED as to Plaintiffs' actual fraud claim.

The Clerk of the Court is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __25th__ day of August, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE