UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION


```
* * * * * * * * * * * * * * *
DONALD R. SCOTT, et al.,      * CIVIL NO. 3:10-CV-00024
                              * JANUARY 20, 2011   1:56 P.M.
              Plaintiffs,     * MOTION HEARING
                              * VOLUME I OF I
vs.                           *
                              *
GMAC MORTGAGE, LLC.,          * Before:
                              * HONORABLE B. WAUGH CRIGLER
              Defendant.      * UNITED STATES MAGISTRATE JUDGE
* * * * * * * * * * * * * * * * WESTERN DISTRICT OF VIRGINIA
```

APPEARANCES:

For the Plaintiffs:      JONATHAN T. WREN, ESQUIRE
                         Martin & Raynor, PC
                         1228 Cedars Court
                         Charlottesville, VA 22903




For the Defendant:       JASON EMMANUEL MANNING, ESQUIRE
                         Troutman Sanders, LLP
                         222 Central Park Avenue, Suite 2000
                         Virginia Beach, VA 23462




ECRO:                    Michelle Bottiglieri

Transcriber:             Judy K. Webb, RPR
                         P.O. Box 1234
                         Roanoke, Virginia 24006
                         (540)857-5100 Ext. 5333


        Proceedings recorded by electronic recording,
transcript produced by computer.

Scott v. GMAC Mortgage – 1/20/2011

 1        (Court convened at 1:56 p.m.)

 2        THE COURT:  Let the record reflect that this is

 3   3:10-CV-24, *Donald R. Scott, et al. v. GMAC Mortgage, LLC*.

 4        We are here on the plaintiffs' December 30th motion to

 5   compel, and to determine the sufficiency of discovery, and to

 6   extend the deadline, the defendant's January 18th opposition.

 7        And in the meantime, there was a motion to compel filed

 8   by the defense in the case.  I don't know where we are with

 9   respect to that.  I mean today is the 20th.  We were notified

10   the other day that the defense thought that the motion to

11   compel had been rendered moot.  But apparently additional

12   things were disclosed between then and now, so I don't know

13   what the situation was.  And that's what precipitated having

14   the hearing as we had originally scheduled, because I want to

15   make sure where we are, and if we're through with a certain

16   thing, I want to make sure we're through.

17        MR. WREN:  Yes, Your Honor.

18        THE COURT:  So, Mr. Wren.

19        MR. WREN:  Yes.  First with regard to the motion to

20   compel that was just filed by the defendant, GMAC, I don't

21   believe that we're prepared to go forward on that today.  As

22   you noted, it was filed after business hours two days ago, and

23   so I think that will need to be briefed and --

24        THE COURT:  Well, hopefully it can get mooted

25   somehow.

1          MR. WREN:   Okay.   We'll do our best.

2      On our motion to compel, I want to first respond to the

3  opposition that was filed by GMAC.   When we initially set this

4  case, set this motion for a hearing today, I received

5  information from the Court that if a response was filed, no

6  need to file a reply, just come here and deal with it here.

7  In addition, because it was filed just two days ago, I haven't

8  had an opportunity to reply, but I want to do it now.

9          THE COURT:   Right.

10         MR. WREN:   The first argument raised by GMAC was that

11 the motion to compel was premature.   Rule 37(a)(1) requires a

12 good-faith attempt to confer, not an actual conference, and we

13 believe that the record shows that we've made extensive

14 efforts to resolve these discovery issues.   But, in light of

15 the pending discovery cutoff of today, we felt compelled to

16 file the motion to compel when we did if the issues weren't

17 resolved by December 30th, which was the date we filed the

18 motion to compel.

19     We're still in agreement to continue working with

20 Mr. Manning and GMAC to try and get the issues resolved, and

21 we put all that in the motion.   We weren't hiding anything

22 from the Court or Mr. Manning with regard to that.   And we had

23 a telephone conference on the 3rd of January 2011, and in that

24 we dealt with both GMAC's problems with our discovery

25 responses and vice versa.

1     Regarding GMAC's discovery to the Scotts, the plaintiffs,

2  we made a number of concessions and agreed to provide

3  supplemental information, and did so promptly, in particular,

4  in enough time for Mr. Manning to have it before the Scotts

5  were deposed on -- I think it was the 13th and 14th of this

6  month, of January.

7     Regarding the Scotts' discovery to GMAC, I sent

8  Mr. Manning a letter the following day, the 4th of January,

9  the day after the telephone conference, detailing specifically

10  what we still needed.  We didn't get any response to that

11  prior to the Scotts' deposition on the 13th and 14th, which

12  might have been helpful for -- among other things, Your Honor,

13  GMAC is now attacking the Scotts for not having information at

14  the deposition about specifically what their monetary damages

15  are as a result of the lender paid mortgage insurance

16  burdening their loan.  Now, from two days ago, the information

17  that we finally received two days before the discovery cutoff,

18  we have information that we believe establishes that the

19  Scotts suffered somewhere between 40- and $50,000 over the

20  life of the loan.

21     THE COURT:  What you're saying is it assisted you in

22  being able to calculate the damages.

23     MR. WREN:  The information is absolutely critical for

24  us to establish the damages.  And they turned over some of

25  that now, two days before.  We still think there is a lot more

Scott v. GMAC Mortgage – 1/20/2011

 1   to go to.

 2          THE COURT:  What I want to know is, is the motion

 3   moot, and if not, why?

 4          MR. WREN:  No, Your Honor, it's not moot.  If you

 5   want to skip over the premature argument and the procedurally

 6   defective argument --

 7          THE COURT:  Whether it's premature, we're holding a

 8   hearing, so that takes care of that.

 9          MR. WREN:  All right.  So what I would propose to do,

10   if we're going to get into what isn't moot, I've taken the

11   liberty to go ahead and taking all of the interrogatories and

12   requests for production of documents that I think still need

13   responses, and putting them in a document, in order with the

14   request and the universe of responses and supplemental

15   responses and our good-faith attempts to get answers, and I

16   would just propose handing that up to the Court and going

17   through them one by one, if that's the way you want to do it.

18          THE COURT:  I don't know if it is or not, but you can

19   do whatever you want.

20          MR. WREN:  Okay.

21          THE COURT:  Have you talked to the defense about

22   this?

23          MR. WREN:  What I did was this morning e-mailed him a

24   copy of this.  I have another version here.

25          THE COURT:  He has probably been on the road.

Scott v. GMAC Mortgage – 1/20/2011

1      MR. WREN:  He has, and he might not have had an

2  opportunity to look at it, so I have an extra copy for him.

3      So the first one is Donald Scott's Interrogatory Number

4  3, which asks for persons with managerial or supervisory

5  responsibility at GMAC in August of 2007 for policies,

6  procedures, and training.

7      You can see what the exchange has been: initially an

8  objection; no name; and then two days ago, Mary Spencer,

9  regional operations manager.

10      For starters, we need the full name, contact information,

11  current -- whether they're a current employee or not, whether

12  she's represented by Mr. Manning or not, and that sort of

13  information.

14      We also believe it's an incomplete answer in the sense

15  that she is the regional -- identified as the regional

16  operations manager.  And in other discovery responses, Karen

17  Morris, who is a major player and originated the loan, is

18  referenced as district manager, and she was on-site.  And we

19  believe that she is somebody with managerial or supervisory

20  responsibility at GMAC at the local branch at the relevant

21  time and would be someone who would be identified there.

22      MR. MANNING:  Judge, could I interject here?  We've

23  just been handed what's a 27-page document, and it appears

24  plaintiffs are proposing to go through these 27 pages.  I mean

25  if that's what Your Honor wants to do, I guess we could do

1    that.

2         THE COURT:  They want to read the Constitution into

3    the record.

4         MR. MANNING:  This is part of why I believe the

5    motion is premature.  All this information is supposed to be

6    identified for the Court and for me prior to a hearing, so

7    that we can get together and talk about it.

8         THE COURT:  Well, no.  If it's premature, it means

9    that these objections and the motion to compel are premature.

10   If they have continued to ask you for stuff and you've

11   continued to supplement it, and you haven't done it within the

12   period of time that's normally allowed for these things to be

13   done, it's not premature.  It's whether you have done it or

14   haven't; and if you haven't, when are you going to be doing

15   it, and, as a result, how much are they owed because you

16   haven't done it?

17        MR. MANNING:  Well, I guess the first issue on the

18   prematurity issue under Rule 37, they're saying, "We sent you

19   a letter.  We're covered."  I believe Rule 37 is intended to

20   require people to actually talk in realtime, whether or not

21   face to face, in a telephone conference, and that never

22   happened.

23        THE COURT:  Well, the problem with this case is

24   there's been a lot of talk and no action.

25        MR. MANNING:  Well, like the letters show -- and Mr.

1  Wren just stated --

2       THE COURT:  I mean this case hasn't been around just

3  since yesterday.

4       MR. MANNING:  The letters reflect that we had

5  proposed to talk on January 3rd.  And this motion, without

6  identifying what was deficient, was filed before that day.

7  And I haven't had the opportunity to look at what has just

8  been handed to the Court of 27 pages of materials.  So what I

9  would propose -- I believe I'm entitled to look through this

10 and respond if there's law in opposition to what they're

11 demanding, to narrow the scope of what is this alleged

12 deficiency.

13      I've proposed prior to today, I believe this was in a

14 letter last week to opposing counsel, look, let's just

15 postpone it for two weeks, give us the opportunity -- you can

16 have another two weeks to do the depositions, which they've

17 made no attempt to schedule at this point, of the witnesses

18 that they believe they need.

19      We've submitted declarations, we've submitted a ton of

20 information, which I can hand up to Your Honor, if that's what

21 we're going to do today, is hand up a bunch of materials.  I

22 can show you what we supplemented last week.  I just think

23 that it's better suited under the rules and for the Court's

24 time for us to talk.  I'm happy to deal with it, Judge, in

25 chambers.  But I believe I'm entitled to prepare a defense and

1   know what they're saying is deficient.  Today, for the first

2   time at this hearing, is what they've identified is deficient.

3            THE COURT:  I really didn't schedule this to go

4   through a line-by-line thing, because I thought surely y'all

5   would be able to know what's still missing, be able to

6   determine it and come to the Court and say, "This still hasn't

7   been done," and I would say, "Do it," and you could --

8            MR. WREN:  Your Honor, if I may, it is a 27-page

9   document, but it is everything that has taken place between

10  the parties.  The suggestion that they don't know what the

11  issues are is somewhat crazy.

12      There was a universe of interrogatories and requests for

13  production of documents, but we thought we got defective

14  answers.  We sent a 13-page, very detailed letter of the

15  reasons why we thought the responses were insufficient.  We

16  followed that up with a two-page letter when we gained more

17  information from Yvonne Wolert, before she became represented

18  by Mr. Manning, finding more information of what we needed.

19  We then had the meet-and-confer over the phone, and the next

20  day I sent, "These are the things that you're agreeing to

21  supplement" --

22           THE COURT:  Let me just take an example.

23           MR. WREN:  Okay.

24           THE COURT:  There's a claim in this case for punitive

25  damages, right?

Scott v. GMAC Mortgage – 1/20/2011

1      MR. WREN:  Yes.

2      THE COURT:  And ordinarily what is done is that in

3  lieu of all the discovery about the assets of a company, net

4  worth statements are ordered by the Court.  So here's

5  Interrogatory 30:  State GMAC's net worth for the years 2007

6  through 2010.

7      Now, is the punitive damage claim still in the case?

8      MR. WREN:  Yes, Your Honor.

9      MR. MANNING:  The Court has taken under advisement

10  the motion to bifurcate.

11      THE COURT:  But that isn't my question.  Is it still

12  in the case?  It hasn't been dismissed?

13      MR. MANNING:  It has not been dismissed, Judge.

14      THE COURT:  Then I don't understand the overly broad.

15  It's not overly broad because the jury has the right to see

16  the before, during, and after status of a company.  I just

17  can't believe that.  Now, it certainly reveals a lot of

18  things, and most of the time this information is kept

19  confidential until and unless it's necessary for trial.  But,

20  you see, there's just this blanket objection: irrelevant.

21  There's no foundation for irrelevance.

22      MR. MANNING:  Judge, the foundation for irrelevance

23  is there's a motion to bifurcate that's currently pending

24  before the court.  The Court has stated that upon ruling for

25  summary judgment they would decide whether or not we need to

Scott v. GMAC Mortgage - 1/20/2011

1   go forward with that kind of information.  Until that's ruled

2   upon, it is irrelevant.

3       And second, in terms of the scope of it, the relevancy is

4   potentially 2007, in the event that there is a finding of

5   liability for punitive damages by the jury, at which point we

6   would then proceed to damages, typically the case law reflects

7   that, you know, shortly before trial, whether it's two weeks

8   or 30 days, under seal to the Court net worth for a particular

9   year is submitted, not a range of years.

10       THE COURT:  See, you didn't say that.  You didn't

11   say, "We have it assembled, it's ready to go, and we will

12   deliver it under terms and conditions that the Court will

13   impose."  You didn't do that.

14       MR. MANNING:  Well, that's because of the motion to

15   bifurcate, Judge.

16       THE COURT:  You just said the request is overly

17   broad, it's irrelevant.  And it's not.  As long as the claim

18   is there, I mean we can deal with it.  It just seems to me --

19   I feel like every time I look at one of these questions and

20   answers, I feel like I'm picking up a stone wall; I really do.

21   And I'm just being honest.  I'm not accusing anybody.  It just

22   has a feeling of it.

23       MR. MANNING:  And what we've proposed, Judge, just so

24   you know how we've tried to resolve it, is we've said, "Look,

25   we can submit this to you two weeks before trial, under seal,

Scott v. GMAC Mortgage - 1/20/2011

```
 1  if you agree to submit your attorney's fees information,"

 2  which is the subject of our motion to compel, and they've

 3  refused.  So it's not that there's a lack of effort to try to

 4  resolve this.  And I believe it's better resolved all

 5  together --

 6          THE COURT:  Well, attorney's fees are not going to be

 7  fixed by a jury.

 8          MR. MANNING:  Well, under fraud, it's an element of

 9  damages, and it would have to be proven by --

10          THE COURT:  Then you could put them on terms about

11  whether they're going to introduce that as an element of

12  damages under fraud.

13          MR. MANNING:  It's required by law.  It's not their

14  choice as to whether they're going to -- they're seeking

15  damages of attorney's fees under the fraud claim.  If they're

16  going to waive their claims to attorney fees under fraud,

17  fine.

18          THE COURT:  I understand.

19          MR. MANNING:  But that's not what they've done now.

20          THE COURT:  Now we're arguing a motion that's not

21  before the Court, and that is premature.

22          MR. MANNING:  Your Honor, we're arguing the next

23  motion, and we disagree.

24          THE COURT:  Good try, though.

25          MR. MANNING:  I believe, Judge, that it would be
```

 1  better suited for us to try to just talk.  I'm here, we're

 2  face to face --

 3          THE COURT:  Here's the problem I'm facing:  Y'all go

 4  do that, but the problem is, it's taken this to get us to this

 5  point, and there's no excuse for that.  The plaintiff has

 6  asked, the plaintiff moved, nothing was done, nothing --

 7  things were forthcoming, but it's dribbled in and it's

 8  dribbled out, and I want to fix a drop-dead date that the

 9  answers to these are as complete as they're going to get.  And

10  if there are no answers to them, then they can use those no

11  answers however they want to, to say you don't have any

12  evidence.  But I know you've got evidence on some of them.

13      And when they ask for an interest rate and you give them

14  a whole bunch of other stuff other than an interest rate, I

15  don't understand it to be honest.  And I'm not fussing with

16  you.  I don't understand why a simple question can't get a

17  simple answer.

18      So, you know, I'm not going to go through all of these,

19  but I will say that, for the plaintiffs' time, if there's

20  further answers that need to be provided, I'm going to award

21  them attorneys fees for coming here, because this is what's

22  precipitated it.

23      And I know that there are legal issues in the case, I

24  know that it hasn't helped that some of those are still

25  outstanding on motions to dismiss or to bifurcate or whatever,

1  and I know that that complicates things, but it does not keep

2  us from moving forward.  And, you know, my problem is, until

3  and unless those claims are gone, they're in the case.  I mean

4  that's been sort of a traditional approach we've taken, and

5  you do something to preserve the evidence.

6          MR. WREN:  One of the potential problems, because

7  we're nearing the trial, today is the discovery cutoff day, we

8  had not scheduled depositions.

9          THE COURT:  That's a problem.

10          MR. WREN:  Our position is that we can't -- this is a

11  document-intensive case.  We can't go forward with depositions

12  of witnesses without having some of this documentation.  For

13  example, Karen Morris, who I mentioned before, was the loan

14  officer and is a key player.  We got two days ago a

15  declaration from her.  And she is represented, as is Yvonne

16  Wolert, as is Julie Martin, all three loan officers, by

17  Mr. Manning and his firm, with strict instructions for us not

18  to talk to them, even though, for example, Ms. Wolert told me

19  that she wouldn't agree to him representing her.  But then he

20  said he did represent her, so I don't know what to do.

21      But the point of it is, we got the declaration from

22  Ms. Morris two days ago, and that declaration attaches, you

23  know, rate sheets and a summary document, and the rate sheets

24  are incomplete.  It's two pages out of 19, on their face, and

25  they are, you know, almost indecipherable for an expert.  And

Scott v. GMAC Mortgage – 1/20/2011

1   it puts us at a significant disadvantage to be taking the

2   deposition of somebody with 30 years of experience in the

3   mortgage industry, who is testifying from rate sheets from

4   three years ago, when we're presented with those at the

5   proceeding.  And it's not efficient --

6          THE COURT:  Well, I'm going to tell you what Judge

7   Urbanski just did in similar circumstances.  He said, I'm

8   going to withhold the decision on whether sanctions are going

9   to be imposed until and unless you-all get this thing

10  straightened out.  If you can't get it straightened out, then

11  I'm going to have a full-blown hearing of what the problem

12  was, the whole history, if it takes all day.  And if I find

13  that GMAC has withheld evidence, there are going to be

14  sanctions, including the possibility of having some of their

15  evidence prevented from being introduced.

16      I'm not reflecting on counsel.  It's a terrible mess.  I

17  don't like where it is on the last day of discovery.  It

18  shouldn't be here.

19          MR. MANNING:  And, Judge, part of the issue here is

20  these three individuals are all former employees.  Again, it

21  all gets back to what Your Honor has already identified as

22  pending issues, one of which is this case is stale; it was

23  brought so late by the plaintiffs that, you know, we're

24  talking about a closed office and people that are former

25  employees.

Scott v. GMAC Mortgage - 1/20/2011

1          THE COURT:  Yeah, but if they're former employees,

2    there's all those ethical rules dealing with who can tell them

3    to do what, where, and who represents them.  Unless they are

4    in the control group, they're out of your control to some

5    extent.  So they have to be in a control group, essentially,

6    before you can tell them what to do.  I mean that's my take.

7    I may be wrong.  Y'all are much brighter than I.

8          One of the reasons I wanted everybody to show up is

9    here's what I'm going to find:  I'm going to find that the

10   motion is not moot, that the discovery requests have not been

11   answered, or they've been answered in ways where objections

12   have been voiced or put forth that really are not sustainable

13   in some form.  Now, I'm not saying every one of them is,

14   because just like you, Mr. Manning, I have not read them

15   because I just got them.

16         But y'all need to do this -- and, of course, the

17   depositions of the individuals that haven't been taken, I mean

18   I can't entertain a motion to extend the time for those to be

19   taken, but I'm going to find out whose fault it is that the

20   basis for information that's necessary to take their

21   deposition and defend it has or has not been produced.

22         MR. WREN:  Okay.  So what the plaintiffs would

23   propose, which is something we proposed in a letter to

24   Mr. Manning sometime ago, is an extension of our ability to

25   take -- plaintiffs' ability to take depositions until the end

Scott v. GMAC Mortgage - 1/20/2011

1   of February, discovery depositions.

2           THE COURT:  When is summary judgment due?

3           MR. MANNING:  Well, we filed a summary judgment

4   motion; the defendant hasn't filed one.  The deadline is 75

5   days before trial.

6           MR. WREN:  It's March 4th.

7           THE COURT:  March 4th.

8           MR. MANNING:  I'm sorry, March 4th is the hearing

9   date.  The dispositive motions have to be filed on

10  February 4th.  So if we're going to move that --

11          THE COURT:  The clock is ticking.

12          MR. MANNING:  What I proposed is two weeks for

13  depositions, two weeks added on for the dispositive motions,

14  two weeks on the hearing, you keep the trial date the same.

15          THE COURT:  I can't do that without consent of the

16  court.

17          MR. WREN:  In two weeks -- we don't have the

18  documents today, so extending the deposition deadline two

19  weeks from today is no relief at all.

20          THE COURT:  Maybe I just need to get a hearing date

21  for you to bring evidence to determine why and under what

22  circumstances information was not produced and why it wasn't

23  produced, and I'll have to find fault.  I can tell you, if I

24  find fault, somebody is going to be deprived of something, the

25  least of which will be money.

Scott v. GMAC Mortgage - 1/20/2011

 1       And, you know, I don't think it's right to stand on

 2  objections and force a motion to compel near the end of

 3  discovery on some things that are just so clearly and easily

 4  answerable.  And to have them dribble in several days before

 5  the close of discovery is not kosher.

 6       Now, I don't know whether it's the client or counsel or a

 7  combination.  I don't want to find fault, because the lawyers

 8  in this case are exceptionally good lawyers and I respect

 9  them, but something is not going right.

10       Now, I can't extend any discovery along those lines,

11  Mr. Manning, unless I get permission from the district judge

12  to do that, because they're the ones on the back end that have

13  to read and research and be prepared for the motions for

14  summary judgment.

15          MR. MANNING:  I believe that Mr. Wren and I could

16  talk about it, proposing a joint motion to extend.  We really

17  don't want to postpone the trial date because our position

18  is there's been excessive written discovery here.

19          THE COURT:  There's no reason for you to, because

20  they don't have information they need.

21          MR. MANNING:  Well, I understand that that's their

22  position, but our position is there's excessive, harassing,

23  written discovery unnecessarily to try to drive up the costs

24  and avoid taking depositions, which are available.  The

25  witnesses are available.

Scott v. GMAC Mortgage - 1/20/2011

1       THE COURT:  Well, I'm not going to permit that

2 either.  If it's within my power, under the circumstances, the

3 depositions will be taken.  But I'm going to tell you, they

4 are entitled to have information upon which they can validly

5 examine the witnesses against them.

6       MR. MANNING:  I understand that, and I agree, Your

7 Honor.  There's been 176 requests for admissions served on my

8 client on a small residential loan case.  It's just excessive.

9 And I understand that they're painting a picture that we're

10 withholding --

11       THE COURT:  That's because you practiced after the

12 rules came into effect.  Before the rules came into effect,

13 requests for admission were all over the place and later

14 denied.  That was discovery.

15    Okay.  Y'all meet.  I'm not going to be around very late

16 this afternoon because I've got another place to go, but

17 something is going to have to get done, and in the meantime,

18 we can communicate.

19    Is Judge Moon around?  He was here today, wasn't he?  So

20 he hasn't gone on vacation.

21       MR. WREN:  Your Honor, I'm not sure what we're

22 talking about exactly, but with regard to summary judgment,

23 extension of summary judgment, we filed our ours, it's ready

24 to go, it's been set for a hearing.  It's after the date --

25       THE COURT:  Is that the March 4th?  No.

Scott v. GMAC Mortgage - 1/20/2011

 1            MR. WREN:  It's set for March 18th, I think it is.

 2  It's set.  It's done.

 3            THE COURT:  So are there two sets of summary judgment

 4  motions?

 5            MR. MANNING:  There will be.

 6            MR. WREN:  There are no summary judgment motions from

 7  GMAC.

 8            THE COURT:  But the time period for filing them has

 9  not expired?

10            MR. MANNING:  That's right.

11            MR. WREN:  That's right.  And I don't know why there

12  would need to be an extension of a filing date deadline for

13  summary judgment motions by GMAC when they've conducted their

14  discovery.  We've given them the information they requested.

15  We've met, we gave them what they wanted, they deposed our

16  clients, we asked them who else they want to depose, they said

17  the expert.

18            THE COURT:  I think he's got a point.

19            MR. MANNING:  The expert.  We're entitled to depose

20  his expert.

21            THE COURT:  Well, if y'all dragged your feet in

22  discovery to drag this to the end -- did y'all agree to take

23  expert depositions after the discovery date had closed?

24            MR. MANNING:  No.

25            THE COURT:  Are you claiming that the plaintiffs have

```
 1   done anything to keep you from taking the deposition until

 2   then?

 3           MR. MANNING:  Well, we didn't receive their

 4   supplemental discovery until last week.  And we have submitted

 5   a brief in opposition to the summary judgment on the basis

 6   that they have withheld evidence that we needed to take the

 7   depositions of the plaintiffs.  They've since supplemented and

 8   we did take the depositions of the plaintiffs, but I just want

 9   the Court to have the benefit of the full scope.  The

10   accusations that they're making are pointing back at

11   themselves.

12           THE COURT:  What if I say no more discovery, what

13   happens?

14           MR. WREN:  We would be severely disadvantaged.  We

15   don't know what the evidence is; we don't know what it is

16   until we get it.  Our expert is trying to figure out what the

17   rate would be if they had gone in -- our fraud case is, Your

18   Honor, our evidence is going to be that the Scotts were in a

19   situation where they didn't need mortgage insurance.  They had

20   received communications from GMAC that they were at that

21   point.  They went to Karen Morris and asked for a loan that

22   didn't have mortgage insurance.  Our evidence will be that

23   they were told they could get a loan without mortgage

24   insurance.

25           THE COURT:  I know.  I remember.
```

 1          MR. WREN:  Okay.  But instead, they were given a loan

 2   with 10,000 extra dollars that they wouldn't have agreed to if

 3   they had known the consequences of that.  GMAC is going to say

 4   they did know, we say they didn't know, okay, and that's the

 5   issue.

 6      But if we prevail on the fraud, one of our damages is

 7   that we're put back in the position we would have been.  What

 8   would the plaintiffs have gotten if they had gotten what they

 9   were told they were going to get?  And we need to know, you

10   pointed out, the interest rate.

11          THE COURT:  I was just reading a question.

12          MR. WREN:  Right.  But that's why we asked that

13   question.  And so part of our damages evidence from our expert

14   is:  What is that number?  How do we arrive at that number?

15   And he is doing the best he can to back into it with the drips

16   and drabs and little bits of information that we got.  But it

17   is within GMAC's control to look at the documents and say,

18   "This was the rate.  This is the rate.  This is what we would

19   have given to them."  We don't have that.  We think we can put

20   on our evidence and do the best we can, but their refusal to

21   provide --

22          THE COURT:  Well, just keep in mind there's a wide

23   range of sanctions that can be imposed, including preventing a

24   party from examining a witness about issues that the

25   information to provide the answer would have come from the

Scott v. GMAC Mortgage – 1/20/2011

1  examining party.  I mean there are all of those ranges,

2  because we're not talking about death penalties here, we're

3  just talking about where the problem lies, whose fault it is,

4  and I don't know.

5          MR. MANNING:  Judge, I can hand up to you the

6  declaration of Karen Morris, so you can see how detailed it

7  is.  She is prepared --

8          THE COURT:  He said there's a listing of pages that

9  seem to be partial.

10         MR. MANNING:  What's been produced are the relevant

11  rate sheets, which has meaning.  There's a specific type of

12  loan.  There's an LPMI loan and there's a home equity line

13  that would have been compared to it.  We produced all those

14  rate sheets.

15         THE COURT:  Those are comparable rate sheets?

16         MR. MANNING:  They have them all.  The explanation,

17  "You're making our job hard," well, you know, you have to

18  prove your case.  We've produced the information.

19      Our position is there's no damages.  And they're saying,

20  "Tell us what the damages are."  Judge, our position is, based

21  on all the variables, they got the best loan available to

22  them.  There is no harm here.  We've produced the supporting

23  documents now.  To the extent their expert is having

24  difficulty, it's because there's no damages.

25          THE COURT:  Well, I've never known it to be a defense

Scott v. GMAC Mortgage - 1/20/2011

1   to a fraud case, "Well, they got a good deal, so why are they

2   complaining?" because if there was fraud, there was fraud

3   whether they got a good deal or not.

4        MR. MANNING:  Yeah, separate issues, I agree.  We're

5   talking about the damages portion.

6        THE COURT:  Well, I guess.

7      Well, I'll try to get ahold of Judge Moon and see where

8   he stands.  Y'all sit here and see what you can come up with,

9   because I really think, Mr. Manning, the burden is on you

10  right now to satisfy them before I have to determine whether

11  their dissatisfaction is unreasonable.

12     And I don't mean to put any more burden than necessary,

13  but I don't think y'all want this going to a full-blown

14  hearing to determine whether you have or haven't, because it's

15  going to cost everybody money, and in the end, somebody is

16  going to pay for it, including risking sanctions dealing with

17  how you present evidence.

18     So y'all meet and see what you can agree to.  I'm going

19  to make a phone call.  I've got a 2:30 criminal matter and

20  then we'll see what happens after that.

21       MR. MANNING:  Should we clear the tables, Your Honor?

22       THE COURT:  That would be nice.

23     Can you go down and put them in a conference room near

24  the clerk's office?  That gives them room.

25       MR. WREN:  Thank you, Judge.

Scott v. GMAC Mortgage – 1/20/2011

1        THE COURT:  Thank you.

2      (Court recessed at 2:25 p.m.)

3

4                       CERTIFICATE

5

6  I certify that the foregoing is a correct transcript from the

7  electronic sound recording of the proceedings in the above

8  entitled matter.

9

10  /s/ Judy K. Webb                Date:  3/11/2011

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25