IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DONALD SCOTT and<br>MELISSA SCOTT,          *Plaintiffs,*<br><br>            v.<br><br>GMAC MORTGAGE, LLC<br>                                      *Defendant.* | CIVIL ACTION NO. 3:10-CV-24<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiffs Donald Scott and Melissa Scott brought this action for damages, seeking to hold Defendant GMAC Mortgage, LLC ("GMAC") liable for common law fraud and violations of the Homeowners Protection Act of 1998, 12 U.S.C. § 4901 *et seq* ("HPA"). In the course of discovery, Plaintiffs brought a motion for sanctions pursuant to Rule 37(c), claiming that GMAC failed to disclose information contained in an electronic document clearinghouse, known as "Pilot." (docket no. 88). Upon consideration of the motion, the magistrate judge entered an order granting Plaintiffs attorney fees; prohibiting Defendant from relying on information contained in Pilot for a wide variety of purposes; and recommending that I enter a default judgment holding Defendant liable on the fraud claim, and issue an adverse jury instruction. (docket no. 111). This appeal followed. (docket no. 143).

For the reasons stated herein, and as set forth more fully below, I will modify those portions of the order prohibiting Defendant from relying on information contained in Pilot; adopt the recommendation to enter a default judgment; decline to review, as moot, the issue of an adverse jury instruction; affirm the award of attorney fees and costs; and award further fees and costs associated with this appeal.

1

**I**.

Plaintiffs entered a residential mortgage refinance transaction with GMAC in August, 2007. The complaint alleges that in the course of the transaction, GMAC fraudulently misrepresented that the loan would not be encumbered with Lender Paid Mortgage Insurance ("LPMI"); that Defendant failed to disclose the existence of LPMI in the manner required by the Homeowners Protection Act; and that Plaintiffs were unable to refinance their mortgage at a desirable interest rate as a result. GMAC admits liability on the HPA claim, but argues, *inter alia*, that the two-year statute of limitations for fraud has lapsed, Va. Code §§ 8.01-243, 249, and that Plaintiffs cannot show that they reasonably relied on GMAC's alleged false representations. *See Cohn v. Knowledge Connections*, *Inc.*, 585 S.E.2d 578, 581 (Va. 2003). Both defenses turn on the extent to which Plaintiffs knew, or should have known, that their loan was encumbered with LPMI when they negotiated and closed on the loan in August, 2007.

Accordingly, the contents and provenance of a number of loan application documents are of great importance. These include:

(i) "General Loan Application Acknowledgment" dated August 3, 2007, signed by Defendant and Plaintiffs, indicating that "[a]t the time of the application, [Plaintiffs'] loan does not require Private Mortgage Insurance," (hereinafter, "Loan Acknowledgment");

(ii) "Mortgage Loan Commitment," dated August 6, 2007, signed by Defendant but not Plaintiffs, indicating that "Private Mortgage Insurance is required," (hereinafter, "GMAC Loan Commitment");

(iii) "Mortgage Loan Commitment," dated August 6, 2007, signed by Plaintiffs and Defendant, containing no language concerning private mortgage insurance, (hereinafter, "Scott Loan commitment"); and

(iv) "Notice Regarding Private Mortgage Insurance," dated January 13, 2010, which appears to comply with the HPA's LPMI disclosure requirements, except that it was not timely delivered (hereinafter, "LPMI Notice").

The existence of these documents gives rise to a number of obvious questions, the resolution of which bears directly on the outcome of the case. Any evidence tending to explain the inconsistency among the documents, why the LPMI notice is dated months after the closing, who created these documents, and when, is highly material.

As explained more fully below, it has become evident that the answers to these questions are found in, or at least suggested by, information contained within GMAC's "Pilot" system. According to GMAC's Rule 30(b)(6) designee, Susan Young, "Pilot is the electronic system of record. It is the tool that was utilized to process, underwrite, and close the loan." Former GMAC employee Yvonne Wolert testified that Pilot keeps track of "all the information" needed to close a new loan transaction, including information inputted by the loan processor, underwriters, loan officers, and managers. GMAC used Pilot to map the information from these disparate sources onto the various documents used to process Plaintiffs' loan. Consequently, the allegation that Defendant withheld information contained in Pilot is quite serious.

### A.

A party's duty to disclose documents in discovery has a number of bases. First, Rule 26(a) imposes a duty to disclose "without awaiting a discovery request . . . a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession . . . and may use to support its claims, or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii). Second, Rule 34 permits a party to request production of "documents or electronically stored information." Fed. R. Civl. P. 34(a). The responding party may object to the request, but if it is a partial objection, the party must "specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

3

Pursuant to the pretrial order, Rule 26(a) initial disclosures were due on July 15, 2010. In compliance with the deadline, Defendant produced a number of loan documents. However, those disclosures were not complete. Significantly, Defendant failed to include a copy of what are known as the "contemporaneous notes" from GMAC loan officer Karen Morris. Dated July 31, 2007, the notes indicate that she "[s]poke to Donald [Scott] and discussed 40 Yr. LPMI, 30 Yr. LPMI, 30 year Combo, and 30 Year with MI." And although it appears on the face of the contemporaneous notes that they were printed, or accessed from Pilot, at 11:43 a.m. on August 26, 2010, they were not produced until November 24, 2010, when GMAC appended them as an exhibit to a brief on summary judgment.

Paragraph 2 of Plaintiffs' October 24, 2010 request for production broadly sought the following documents:

> For any loans between Plaintiffs and GMAC that were secured by Plaintiffs' home, any and all documents containing, evidencing, referring to, or otherwise involving: (a) conversation/contact/loan logs; . . . (c) all internal GMAC communications; . . . (e) the available options, negotiation, terms, processing, servicing . . . [and] (m) the servicing of any such loan, including responding to inquiries made by or on behalf of Plaintiffs concerning mortgage insurance.

By letter to GMAC dated December 14, 2010, Plaintiffs voiced numerous discovery objections, among them that the late production of the contemporaneous notes had given rise to their suspicion that GMAC was withholding documents. Accordingly, they asked that GMAC "confirm that GMAC has produced every requested document. . . ." In a more concise follow-up letter dated December 17, 2010, Plaintiffs wrote to "make specific demand for documents that we believe should have been provided to us . . . ." The letter proceeds to describe that a "former GMAC employee"[1] informed counsel that:

---

[1] Later identified as Yvonne Wolert.

>   the Pilot program should generate a "log" or some other form of evidence that shows: what documents were generated as a part of the loan; when those documents were generated; who accessed those documents; when those documents were accessed; who amended any accessed documents; when any amendments were made; why the amendments were made; etc.  In addition, it is our understanding from this source that the contact notes made and stored in the Pilot program, of which your "contemporaneous note" is one, should be numerous.

On December 23, 2010, Defendant's counsel responded, offering to meet and confer on January 3, 2011 to resolve the various issues identified.  Prior to the meeting, Plaintiffs filed a motion to compel.  Then, by letter dated January 4, 2011, Plaintiffs responded to Defendant's objection that the Paragraph 2 request was overly broad, by agreeing to limit the request "to the subject Loan."   However, they noted that "for the reasons stated previously . . . we are concerned that we have not been provided . . . *GMAC's entire paper and electronic files*."  (emphasis added).

**B.**

On January 20, 2011, the parties appeared before the magistrate judge for a hearing on the motion to compel.  Upon counsel's suggestion that the matter could best be resolved out of court, the magistrate judge responded:

>   [T]he problem is, it's taken this to get us to this point, and there's no excuse for that.  The plaintiff has asked, the plaintiff moved, nothing was done, nothing – things were forthcoming, but it's dribbled in and it's dribbled out, and I want to fix a drop-dead date that the answers to these are as complete as they're going to get.  And if there are no answers to them, then [Plaintiffs] can use those no answers however they want to.

Nonetheless, he deferred any decision on the motion to allow the parties opportunity to resolve the dispute.  After conferring subsequent to the hearing, the parties submitted a number of discovery deadlines to the court, which the magistrate judge adopted by order dated January 25, 2011. The order fixed a February 4, 2011 drop-dead date for Defendant to complete its supplemental responses and document production.  Having determined that the matter was resolved, the magistrate judge dismissed the motion to compel without prejudice on January 26, 2011.

5

On February 4, 2011, in purported compliance with the discovery deadline, Defendant issued its supplemental responses to the request for production of documents. Again, it objected to Paragraph 2 of Plaintiffs' request, asserting that it was overly broad. Despite not having produced any additional Pilot documents, Defendant contended that "GMAC has produced the entire loan file and all notes or communications related to the Loan."

Evidently unsatisfied with Defendant's response, Plaintiffs filed a motion for sanctions on March 4, 2011, on the basis of GMAC's "refus[al] to provide the electronically stored Pilot system information or documents." Upon consideration of the motion, the magistrate judge noted:

> The problem with this is when you couple the requirements of Rule 26 with the responses here, an opposing party would have the right to rely on those all the way up through summary judgment and trial. But that isn't what the evidence reveals. There were documents not produced contained in what I would call this clearing house electronic storage medium called the Pilot Program accessible by and to anybody working on the loan, clearly relevant to these proceedings. Whether admissible or not is not the question. But certainly could lead to discoverable evidence, including the preparation of any examination of any opposing witness that the defense may offer, including the preparation of the expert for purposes of testifying as to whether there was any fraud or anything else.

He found that there had been "an abject failure to produce evidence that is crucial to this case or at least the development of the case."

Accordingly, the magistrate judge entered an order granting attorney fees and prohibiting Defendant from (i) using information obtained from Pilot in support of or opposition to any motions for summary judgment or partial summary judgment; (ii) relying in whole or part on any information contained in the Pilot system in support of its motion to exclude the testimony of Plaintiffs' expert witness; and (iii) opposing any of Plaintiffs' claims or supporting any of its defenses with the use of any information contained in the Pilot system. He further recommended that I (i) enter default judgment against Defendant on all issues of liability related to Plaintiffs'

claim for fraud; and (ii) in the event the case proceeds to trial, issue a jury instruction concerning Defendant's failure to disclose, and informing the jurors that they may draw an adverse inference from such non-disclosure.

## II.

Under Federal Rule of Civil Procedure 72(a), the nondispositive orders of a magistrate judge may only be set aside if clearly erroneous or contrary to law. "The decision to award sanctions . . . is generally considered nondispositive unless the sanction imposed is itself dispositive of a claim or defense, *i.e.*, the dismissal of a claim or defense." *Bowers v. Univ. of Virginia*, No. 3:06-cv-41, 2008 WL 2346033, at *4 (W.D. Va. June 6, 2008). Among other things, the magistrate judge recommended an entry of default judgment. This recommendation must be reviewed *de novo*.

## A.

A failure to disclose under Rule 26(a) may give rise to the imposition of sanctions. *See* Fed. R. Civ. P. 37(c). As noted earlier, Rule 26(a) requires a party to disclose, without a discovery request, "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has . . . and may use to support its claims or defenses. . . ." The duty is on-going, and a party must supplement its initial disclosures if it learns that they are incomplete or incorrect. Fed. R. Civ. P. 26(e). According to the 2000 Advisory Committee Notes, the "use" implicating Rule 26 includes "any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery . . . ." For instance, "use of a document to question a witness during a deposition is a common example." *Id.* At the outset, I note that Defendant initially failed to disclose Rule 26(a) material, consisting in particular of the contemporaneous

7

notes.  Although it appears on the face of the notes that Defendant accessed them on August 26, 2010, it first produced them nearly three months later.

Moreover, GMAC clearly used the information contained within Pilot to "question a witness during a deposition." *See* Fed. R. Civ. P. 26 advisory committee's note.  Susan Young testified that in preparation for her February 18, 2011 deposition, she "reviewed that system to see if I could identify why some of the [loan] documents might have been different and was not able to identify any change" that would have explained it.  She ultimately concluded that the discrepancy among the documents must have arisen from a software malfunction, and Defendant relied on this testimony in its reply brief in support of its motion for summary judgment, filed on March 11, 2011.  Although Defendant contends that its invocation of Young's testimony does not amount to a "use" within the meaning of Rule 26, because GMAC's brief only cites to Young's testimony concerning the software glitch, I disagree.  Her statement that she "reviewed that system" to arrive at her determination necessarily implicates the full scope of information available within Pilot.  Accordingly, Rule 26(e) required Defendant to disclose the Pilot data as early as February 18, 2011.

Under Rule 37(c)(1), a court may impose sanctions if a party "fails to provide information . . . as required by Rule 26(a) or (e) . . . unless the failure was substantially justified or harmless."  In *Southern States Rack and Fixture Company v. Sherwin-Williams Company*, 318 F.3d 592 (4th Cir. 2003), the Fourth Circuit identified five factors that a court should consider in making such determinations:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing Party's explanation for its failure to disclose the evidence.

*Id.* at 597. The court explicitly held that this test "does not require a finding of bad faith or callous disregard of the discovery rules," although it may be "relevant to the fifth factor." *Id.*

Defendant contends that the first and fourth *Southern States* factors weigh in its favor, because the undisclosed information was duplicative and immaterial. As has become apparent, that contention is patently false. Following the magistrate judge's order granting sanctions, Defendant produced a number of screenshots from Pilot, including the following:

(i) GMAC/DMS 910, entitled "Items needed for processing," stating that "PMI Requirements" were "Waived" as of August 6, 2007.

(ii) GMAC/DMS 824, entitled "Changed Pricing and Lock Data," showing that on August 6, 2007, a user changed the "MI Insured" field on the loan four times.

(iii) GMAC/DMS 915, entitled "Items Required for Final Submission," showing two "Mortgage Loan Commitments," dated August 6, 2007 and August 16, 2007.

(iv) GMAC/DMS 916, entitled "Items Required for Final Approval" showing that a "Notice Regarding Mortgage" was "outstanding" as of January 13, 2010.

(v) GMAC/DMS 935-936, entitled "Loan Data Export History," showing the identity, by username, of individuals who accessed the loan, along with dates and times of access.

(vi) GMAC/DMS 959, entitled "Notes to Closing," identifying GMAC employees who had not been previously identified (i.e. Brandi Brewer and Pam Smith) and who were involved in the loan transaction.

The significance of these documents is extraordinary, and the failure to produce them until this late hour is inexcusable.

One of GMAC's principal arguments in support of its motion for summary judgment was that Plaintiffs knew or should have known that their mortgage "required" LPMI, pursuant to a GMAC policy that "required" such insurance where the principal amount of the loan exceeded 80% of the appraisal value of the property securing the loan. To the extent the argument is

9

sound, it suggests that Plaintiffs' claim is time barred, and that Plaintiffs' cannot prove reasonable reliance on GMAC's alleged fraudulent statements. Yet, GMAC/DMS 910 suggests that Defendant's argument was utterly frivolous because "PMI Requirements" had been "waived."

Another lately produced document may provide information relevant to determining why there are two, conflicting Loan Commitments dated August 6, 2007. GMAC/DMS 824 shows that a user identified as "b181ga34" changed the "MI Insured" field on the loan at 2:56 p.m., 2:57 p.m., 2:59 p.m, and 3:13 p.m. on August 6, 2007. Yet because of GMAC's obstinate refusal to produce this clearly relevant information, Plaintiffs have not yet been able to determine who "b181ga34" is, and why this user might have changed the "MI Insured" field four times in one day. Although this line of inquiry might have been unavailing, Plaintiffs should have been given the opportunity to pursue it.

Plaintiffs have argued that a January 25, 2010 letter from GMAC purporting to "enclos[e] copies of the documents prepared during the origination of your loan," is indicative of fraud, because the enclosed LPMI Notice was actually dated January 13, 2010, well after the origination of the loan. GMAC/DMS 916 corroborates this claim, showing that a "Notice Regarding Mortgage" was an outstanding "Item[] Required for final Approval" as of January 13, 2010. Another lately produced document shows that there may be a third Loan Commitment document, which must be investigated. Another document reveals at least two potential new witnesses, Brandi Brewer and Pam Smith. And GMAC/DMS 935-936 confirms that Plaintiffs were right to suspect, months ago, that Defendant's had failed to produce a "log or list of actions that were taken on the Scotts' loan." Accordingly, the first and fourth *Southern States* factors weigh strongly against Defendants.

Contrary to Defendant's contention, a short continuance would not cure the problem. The significance of the information lately disclosed would require the parties to depose nearly every witness again, to interview new witnesses, and to begin the summary judgment process *ab initio*. As this would require a lengthy continuance, at significant cost to the Plaintiffs, the second *Southern States* factor weighs in favor of granting the default.

Moreover, as Defendant has only provided feeble justification for its refusal to produce Pilot documents, the fifth *Southern States* factor weighs against it. GMAC has argued that production would be "burdensome," and that GMAC believed it had reached a compromise with Plaintiffs, whereby Plaintiffs agreed to allow GMAC to withhold its entire electronic loan file. As discussed in Part B, below, neither of these contentions bears any scrutiny, and viewed together with GMAC's other misrepresentations, they are indicative of bad faith intent to deprive Plaintiffs of key evidence to which they are manifestly entitled. Thus, the only *Southern States* factor that arguably weighs in Defendant's favor is the third, since the trial has not yet begun.

Especially when viewed in light of Defendant's refusal to respond to discovery requests, discussed below, the entry of a default judgment on Plaintiffs' claim of liability for fraud is wholly appropriate under Rule 37(c).

**B.**

Defendant argues that the *Southern States* test is inapposite where a court enters a default judgment sanction. In such cases, Defendant posits that the court must apply a four-factor test, which includes a bad-faith prong. *Southern States* rejected application of that test, including the bad faith requirement, to a sanction imposed under Rule 37(c)(1). *See* 318 F.3d at 597. One plausible reading of the decision is that it applies to all analyses under the rule. However, another colorable reading is that the five-factor *Southern States* test is limited to the case of

11

evidence exclusion. *See Southern States*, 318 F.3d at 597 ("While the broad language of these decisions suggests that a court must consider [the four-factor test] as part of any sanctions analysis under Rule 37, neither of these cases addressed exclusion of undisclosed evidence under Rule 37(c)(1)"). Thus, in light of the magistrate judge's indication that he based his decision in part on Defendant's failure to respond appropriately to discovery requests, which directly implicates Rule 37(b), and Defendant's contention that the four-factor standard provides no basis for a default judgment, it is appropriate to address these issues.

A failure to comply with a court order, including a scheduling order, may give rise to discovery sanctions. Fed. R. Civ. P. 37(b)(2)(A); *Hathcock v. Navistar Int'l Trans. Corp.*, 53 F.3d 36, 40 (1995) (holding that "a default sanction can, under certain circumstances, be an appropriate response to the violation of a Rule 16 order."). In evaluating a motion for sanctions under Rule 37(b), the court must consider four factors: "(1) whether the noncomplying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir.1998); *accord Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir.2001) (*en banc*), *cert. denied*, 535 U.S. 986, 122 S.Ct. 1537, 152 L.Ed.2d 465 (2002), and *cert. denied*, 535 U.S. 986, 122 S.Ct. 1538, 152 L.Ed.2d 465 (2002).

While a court has broad discretion to impose discovery sanctions, it is not "without bounds or limits." *Wilson v. Volkswagen of Am.,* 561 F.2d 494, 503 (4th Cir. 1977). "In the case of default, the 'range of discretion is more narrow' than when a court imposes less severe sanctions." *Hathcock v. Navistar Int'l Trans. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (citing

*Volkswagen,* 561 F.2d at 503). This is because a default judgment deprives a party of its right to trial by jury, and "runs counter to sound public policy of deciding cases on their merits, and against depriving a party of his fair day in court." *Wilson*, 561 F.2d at 504. (quotations omitted). The Fourth Circuit has "emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction." *Hathcock*, 53 F.3d at 40. "[T]he exercise of the power should be confined to the 'flagrant case' in which it is demonstrated that failure to produce 'materially affect[s] the substantial rights of the adverse party' and is 'prejudicial to the presentation of his case.'" *See also Wilson,* 561 F.2d at 504.

As noted, the magistrate judge sought to impose a "drop-dead date" for the completion of discovery, and ultimately fixed a February 4, 2011 deadline for Defendant's document production to be complete. When the date arrived, Defendant had still not produced all of the documents responsive to Plaintiffs' Rule 34 request for documents. Moreover, its objections should not have prevented it from producing the Pilot files related to the subject loan.[2]

Defendant effectively contends that the court must explicitly use the word "default" as a pre-requisite to imposing a default judgment sanction. However, the Fourth Circuit has merely "emphasized the significance of warning," *Hathcock*, 53 F.3d at 40, and described explicit warning as a "salient fact." *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 n.2 (4th Cir. 1987). Although there is strong language in an unpublished decision suggesting that the court "must" explicitly warn of default, the court ultimately remanded the case, because the four-factor test did not "unequivocally weigh in favor of dismissal, especially in light of the absence of

---

[2] As mentioned, Defendant objected that the request was overly broad to the extent it applied to information regarding loans other than the subject loan, and information that was protected by the work product and attorney-client privileges. The first objection is clearly inapposite to Pilot files related to the subject loan, and there has never been any indication that Pilot contained any documents protected under the attorney-client, or work product privileges. Although the rules allow a party to object to a request for production of documents, they must nonetheless produce those documents to which they have no credible objection. See Fed. R. Civ. P. 34(b)(2)(C).

13

notice . . . ." *Malhotra v. KCI Technologies, Inc.* 240 Fed. App'x 588, 590 (4th Cir. 2007) (unpublished decision).  Thus, none of these cases hold that notice is *per se* dispositive.

Moreover, at the January 20, 2011 hearing, the magistrate judge made it clear that Defendant's failure to comply with discovery requests would result in sanctions.  He told Defendant's counsel that "the burden is on you" to satisfy Plaintiffs' discovery demands.  He warned that "the discovery requests have not been answered, or they've been answered in ways where objections have been voiced or put forth that really are not sustainable in some form."  He further cautioned that "if I find GMAC has withheld evidence, there are going to be sanctions," and in a clear reference to GMAC, he also admonished that it was inexcusable to "force a motion to compel near the end of discovery on some things that are just so clearly and easily answerable."  Finally, his admonition that a "wide range" of sanctions could be imposed implicated the panoply of options at the court's disposal.  These repeated warnings substantially satisfy the notice requirement imposed by the caselaw.

Moreover, each element of the four-factor test supports the determination that a default judgment is appropriate.  *See Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir.1998).  Most significantly, Defendant's catalog of misdeeds and misrepresentations indicates bad faith intent to withhold key evidence from Plaintiffs and the court.  For instance, at the hearing on the motion to compel, Defendant misrepresented that for the "first time" GMAC was learning what Plaintiffs claimed was deficient.  This was not true.  Later, in its opposition to the motion for sanctions, GMAC asserted that Plaintiffs "did not serve written discovery requesting production of the Pilot program," and that they "did not even mention the Pilot program in their written discovery requests until issuing 30(b)(6) deposition topics on February 14, 2011 . . . ."  This was also not true.  Paragraph 2 of the October 24, 2010

14

request should have elicited many documents from Pilot, and Plaintiff's subsequent letter demands could not have been clearer.

In support of the instant appeal, GMAC contended that "Defendant offered to discuss [Plaintiffs' discovery objections] on January 3, 2011" but Plaintiffs "rejected that offer out of hand." This was false. The aforementioned letter of January 4, 2011 specifically noted that it was "a follow-up to our discovery 'meet and confer' on January 3, 2011."

Moreover, Defendant has repeatedly claimed that GMAC made Pilot available during the Susan Young deposition, which Plaintiffs attended telephonically. But the transcript reflects otherwise. When asked what screens from Pilot she viewed in preparation for her deposition, she replied, "[w]ithout having the system, you know, available . . . I can't tell you the exact screens that I looked at but I went through the system to view information."

In addition, Defendant has claimed on multiple occasions that its failure to produce evidence related to Pilot stemmed from a belief that the parties had compromised on the issue subsequent to the January 20 hearing. Purportedly, "Plaintiffs limited their inquiries to the Pilot program about whether or not other contact notes were stored or maintained" in Pilot. GMAC raised this claim in support of the instant appeal, and on numerous other occasions. Yet in light of Plaintiffs' explicit, targeted letters of December 17, 2010, and January 4, 2011, the absence of any writing memorializing the agreement, and the manifest importance of Pilot to the case, I do not credit Defendant's contention. In any event, Defendant's account provides no excuse for its false claim on February 4, 2011 that "GMAC has produced the entire loan file and all notes or communications related to the Loan." To say as much, while withholding nearly the full scope of data within its "electronic system of record," is unjustifiable.

It was only after the "drop-dead date" that the falsity of Defendant's statement emerged. In a February 18, 2011 deposition, when asked whether Pilot contained a "log or list of actions that were taken on the Scotts' loan," GMAC's Susan Young replied, "there are status screens which tells you what status the loan moved to."  She also explained that "[o]nce the loan closes and funds, [the Pilot] system is locked with the information of how the loan was closed."  In addition, when former GMAC employee Yvonne Wolert was asked whether Pilot leaves a record of which employees accessed or modified documents, she replied, "that's why they have separate logins, so they can see, you know, who is the person working on that file or whose name it's in . . . ."  She further clarified,

> Like at the end when I finish the file, and I stepped it to closing docs complete, it will show my name and the date and time of when that was done.  So, if like a loan officer wants to know do I have my closing doc finished, they would just go into that part in Pilot and see yes, Yvonne completed her file.  I have the time here when it was stepped that she completed it.

As Plaintiffs had made it perfectly clear that they sought information from Pilot concerning access logs, GMAC's refusal to produce that information is all the more troubling.

Defendant has consistently maintained that producing the Pilot documents would be unduly burdensome.  Most recently, on March 21, 2011, counsel for Defendant reiterated "and the only reason we didn't [disclose the information] upon receiving the motion, Judge, is because it is the system that is very difficult to access."  Even if true, this would provide little reason to withhold key evidence pertaining to the litigation.  But it was not true.  Mere days after the hearing, Defendant claimed to have completed production of all of the information in Pilot. Upon review of the lately produced documents, it is evident that the great bulk of them were printed out or accessed from Pilot between 11:10 a.m. and 12:52 p.m. on March 19, 2011 – two

days before the hearing.  This two-hour effort hardly amounts to an inconvenience, let alone an undue burden.

Moreover, at the same hearing, Defendant claimed that "there is no other non-duplicative material information in the Pilot program."  As discussed in Part A, above, this was patently false.  Because the lately produced documents contain significant, new, material information, their disclosure after the close of discovery, after the filing and argument of summary judgment motions, and on the eve of trial, has greatly prejudiced Plaintiffs.  Had the Pilot documents been produced months ago, as they should have been, it may have increased Plaintiffs chances of securing a settlement.  In any event, it certainly would have given rise to additional depositions or at least witness interviews, which could have in turn led to further evidence.   Moreover, the information could have been used to inform nearly every deposition taken, and all of the briefing on summary judgment provided to the court.  For that reason, Defendant's contention that a short continuance would be an adequate sanction is without merit.  Its malfeasance has essentially put Plaintiffs in the position they should have occupied months ago.

Accordingly, any sanction less severe than an entry of default judgment would be insufficient under the circumstances.  Rule 37(b)(2) suggests the following sanctions:

>  (i)  directing that matters embraced in the order . . . be taken as established . . .
>  (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>  (iii)  striking pleadings in whole or part;
>  (iv)  staying further proceedings;
>  (v)  dismissing the action . . .
>  (vi)  rendering a default judgment . . . or
>  (vii)  treating as contempt of court the failure to obey . . .

Options (i), (iii) and (v) are inapposite here.  Option (ii) would be a more effective deterrent where a party withholds information that is beneficial to it, and for reasons already mentioned,

option (iv) is inappropriate.  Furthermore, neither party has suggested that contempt proceedings are in order.

I concur fully with the magistrate judge that when a party represents that it has produced all documents responsive to a discovery request, the opposing party has the right to rely on that representation through summary judgment and trial.  To make such claims, falsely, and to conceal evidence as valuable as the evidence concealed in this case, cannot be permitted.  In light of Defendant's egregious misconduct, the imposition of a harsh sanction is necessary to provide adequate deterrence for GMAC, and those that might follow GMAC's example.

### III.

The entry of a default judgment on liability for the fraud claim does not dispose of the case, as damages determinations, on both the HPA and fraud claims, remain to be decided.  Accordingly, I must address how the remainder of the magistrate judge's order applies to the proceedings that may follow.

The magistrate judge's order prevents Defendant from using information "obtained from Pilot" in connection with the pending motions for summary judgment;[3] using "information contained in Pilot" in support of its motion to exclude Plaintiffs' expert witness; and opposing Plaintiffs' claims, or supporting GMAC's defenses with "information contained in Pilot."  Read literally, these prohibitions could effectively prevent GMAC from raising almost any defense regarding the outstanding issues.  As such, the prohibitions are tantamount to a default judgment, and *de novo* review is appropriate.

---

[3] Plaintiffs' motion for summary judgment sought liability on the fraud claim, and is therefore mooted by this disposition.  Defendant's motion for summary judgment, however, raised certain claims related to damages, which are not affected by this opinion.

Defendant has raised a number of objections concerning the exclusion of evidence. First, it contends that this sanction may only issue in egregious cases. *See Lathon v. Wal-mart Stores East, LP,* No. 3:09-cv-57, 2009 U.S. Dist. LEXIS 54682, at *6, 12 (E.D. Va. June 24, 2009); *Derrickson v. Circuit City Stores, Inc.*, 95-3296, 1999 U.S. Dist. LEXIS 2110, at *20 (D. Md. March 19, 1999) (concluding that "exclusion is a harsh sanction"). As I have already concluded that this is an egregious case, Defendant's argument is unavailing. Second, Defendant contends that it is unfair to apply the exclusion to evidence already disclosed months ago. I agree. To address this concern, I will limit the order to apply only to non-duplicative information "contained in" or "obtained from" Pilot, which was produced after the March 18, 2011 hearing on the motion for sanctions.

Because Defendant did not object to the award of attorney fees, I will affirm the magistrate judge's order in that respect. I will also grant fees and costs associated with this appeal. Finally, as the entry of default judgment and the late production of documents render the jury instruction issue moot, I decline to review it.

The Clerk of the Court is directed to send a certified copy of this opinion to all counsel of record.

Entered this __13th__ day of April, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE